# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RIGOBERTO GARCIA and ANA GARCIA,

    Plaintiffs,

v.

CITY OF CHICAGO, DEMOLITION AND DEVELOPMENT, LTD., AND STEWART STRICKLAND,

    Defendants.

No. 04 C 7963
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rigoberto and Ana Garcia owned a brick and wood-frame building on the south side of Chicago. On February 25, 2004, fire severely damaged the two-story, wood-frame structure. The brick structure, housing Plaintiffs' restaurant and grocery store, suffered only minor damage. Shortly after the fire, Plaintiffs met with their insurance adjuster and with a City of Chicago building inspector. All agreed that the brick structure appeared to be in good condition. Garcia, therefore, was understandably shocked to discover contractors in the process of demolishing the brick structure when he arrived at his property just a few days later, on March 1, 2004.[1] He attempted to persuade the contractors to stop the demolition; they refused, insisting they had authorization from city officials. Garcia then tried to contact officials at the city's building department, but to no avail: the offices were closed in celebration of Pulaski Day. The contractors razed the building before Garcia could save it.

---

[1] The frame structure was demolished, without objection by Plaintiffs, on February 26, 2004.

Plaintiffs subsequently filed a three-count Complaint in this Court alleging a violation of their right to due process when the City authorized the destruction of their property without notice and without any emergent need (Count I) in violation of 42 U.S.C. § 1983, and alleging wrongful demolition (Count II) and conversion (Count III) under Illinois law. Defendants moved to dismiss Count I under *F. R. Civ. P. 12(b)(6)*, claiming that Plaintiffs failed to state a claim under federal law. Defendants moved to dismiss the latter two counts under *F. R. Civ. P. 12(b)(1)*, asserting that if the first claim fails, I lack jurisdiction to consider the latter two state law claims.

In considering whether Plaintiffs have properly stated a claim, I consider all well-pleaded allegations of the Complaint as true and draw all reasonable inferences in favor of the Plaintiffs. *Tobin for Governor v. Ill. Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001). The Complaint "must allege facts bearing on all material elements 'necessary to sustain a recovery under some viable legal theory.'" *Looper Maint. Serv. v. City of Indianapolis*, 197 F.3d 908, 911 (7th Cir. 1999) (quoting *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998)). However, Plaintiffs' Complaint should not be dismissed "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

*Does Complaint Allege Violation of City Policy?*

In order for the City to be liable under 42 U.S.C. § 1983, Plaintiffs must demonstrate that they were deprived of a federal right (which they have duly alleged) and that the actions of the City in depriving Plaintiffs of their rights were taken pursuant to a City policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("it is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"). *Respondeat superior* does not impose § 1983 liability upon a municipality. *Id*. at 691. A municipal employee acts pursuant to a municipal policy when he or she: 1) acts pursuant to an express policy; 2) follows a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a 'custom or usage' with the force of law;" or 3) acts with "final policy making authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995) (citations omitted).

Defendants contend that Plaintiffs fail to allege that they were deprived of their property pursuant to an express municipal policy or widespread practice. For this proposition, Defendants ask that I take judicial notice of the Chicago Municipal Code, § 13-8-100 (1999). Defendants assert that the Code requires notice in all cases of building demolition. If correct, Plaintiffs could not have suffered a due process violation when their building was destroyed without prior notice, because the action would have been in direct violation of City policy.

Plaintiffs offer an alternative reading of the Municipal Code. Section 13-8-100 of the Code states, in relevant part:

> **Dangerous Buildings and Structures**
> (a) Whenever a building or structure or part thereof shall have been damaged by fire . . . and where it constitutes an actual and imminent danger to the public, the buildings commissioner shall have the power to order said building . . . closed and to order any licensed and bonded wrecking contractor forthwith to remove said building . . . When the buildings commissioner has ordered a building, structure or part thereof vacated and closed as provided in this section, the buildings commissioner may post or cause to be posted in a conspicuous place . . . a notice . . . stating substantially as follows:

3

> This building has been ordered closed by the City of Chicago due to code violations that threaten life, health or safety. Entry is forbidden except for necessary repairs and government inspection.
>
> The notice shall be dated and shall bear the city seal. If only a portion of the building has been ordered closed, removed, or shut down, then notice shall be modified to identify the affected portion, and shall also be affixed at each interior entrance to that portion. The commissioner shall cause a notice as provided in section 13-12-130 to be sent to the owner of the property.

Chicago Municipal Code, § 13-8-100. Plaintiffs urge me to adopt a particularly strained reading of the final paragraph of the Code: specifically, that the final sentence, requiring notice to property owners, applies only to those situations in which *a portion* of a building has been ordered closed, removed or shut down. Plaintiffs argue that in cases in which buildings are to be destroyed *completely*, the building commissioner has virtually unfettered discretion to order demolition without any notice to the affected parties.

Reading the Code as Plaintiffs suggest leads to an absurd result: it excuses the City from providing notice of demolition in any case of complete demolition. Nothing in the language of § 13-8-100, read in its entirety, suggests such a blanket exception. Moreover, Plaintiffs' reading of the Code disregards the structure of the entire paragraph and takes the latter two sentences out of context. The first sentence of the final paragraph of subsection (a) addresses the form of the notice to be given. The second sentence of the paragraph addresses a unique situation requiring a special kind of notice: situations in which only a portion of a building is to be destroyed. Cases of partial demolition require changes to both the content and location of the notice. The third and final sentence provides instructions for proper delivery of notice. While this is not an exceptionally well-organized paragraph, I find its general purpose is to address the form and

delivery of notice. I further find that the notice requirements listed in the paragraph apply generally to the situations described in the very first (and primary) paragraph of the subsection: those in which a building or structure or part thereof has been damaged in the manner described.

Defendants also contend that Plaintiffs fail to allege that any city employee was acting with "final policymaking authority," an alternative ground for establishing § 1983 liability. *McTigue*, 60 F.3d at 382. Plaintiffs do, in fact, make this argument in their response to Defendants' Motion to Dismiss. *Pl. Resp.* at 7. However, their argument depends upon the premise that under the Municipal Code, the buildings commissioner is not required to give notice to property owners in cases of complete demolition, and therefore the commissioner has unfettered discretion to determine whether any building "lives or dies." Having found that the Code vests no such discretion in the commissioner, I find that at best the Complaint alleges that the decision was made in violation of a city policy and not by anyone holding final policymaking authority.[2] Because no city policy authorized the demolition of Plaintiffs' building without notice, Plaintiffs have failed to state a claim under § 1983.

*Does Complaint Fail Due to Adequate Alternative Remedies?*

Defendants assert that the random and unauthorized nature of city officials' actions in ordering the demolition of Plaintiffs' building provides an additional ground for the dismissal of

---

[2] Moreover, the ordinances governing the conditions for demolition, including the notice required, are established by the Chicago City Council. The Department of Buildings only implements and enforces the City Council's demolition policies. *See Chicago Municipal Code* § 13-8-020 ("[i]t shall be the duty of the building commissioner to administer and enforce the provisions of this Code that relate to . . . demolition"). This does not render the Department of Buildings or its commissioner policymakers. *See Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992) (stating that the responsibility for setting policy "is authority to adopt rules for the conduct of government" and that in Chicago, "[a]uthority to make a final decision need not imply authority to establish rules").

5

Plaintiffs' claim. When a municipality's employees are alleged to have engaged in "random and unauthorized" conduct, a plaintiff does not suffer a due process violation if the municipality offers an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). *See also Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996) ("an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause if a meaningful postdeprivation remedy for the loss is available") (discussing *Hudson v. Palmer*, 468 U.S. 517 (1984)).

Plaintiffs respond that the Defendants' conduct was not random and unauthorized, but entirely predicable. *See Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996) ("[e]valuating conduct to determine whether it is random and unauthorized involves determining whether the conduct was predictable") (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). Whether conduct is predictable turns on "the amount of discretion afforded the state actor, and whether that discretion is uncircumscribed." *Id*. Plaintiffs argue that in this case, the demolition of their building without any notice was predictable because the Municipal Code gives city officials unfettered discretion to order the demolition of the entire building without notice to property owners. As discussed above, I do not believe the Municipal Code authorizes this amount of discretion, but rather requires city officials to provide notice prior to the demolition of any building, whether in whole or in part.

To determine whether the *Parratt* doctrine precludes liability, I must consider whether "predeprivation procedural safeguards could address the risk of deprivations of the kind [the plaintiff] alleges." *Zinermon*, 494 U.S. at 132. In this case, Plaintiffs argue that the nature of

their injury – the destruction of their property *after* a determination by both a city inspector and an insurance adjuster that their building was sound – is one particularly amenable to pre-deprivation process. The Supreme Court instructs that "[t]he fundamental requirement of due process is the opportunity to be heard at a 'meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). I find that the Chicago Code affords that opportunity by requiring the commissioner to provide notice to property owners before their property is demolished. The decision of a city official to ignore the requirements of the Code, and order the demolition of Plaintiffs' property in direct violation of that Code, does not entitle Plaintiffs to relief under § 1983.

Setting aside Plaintiffs' arguments regarding proper construction of the Code's language, I find nothing else in their Complaint suggesting that the conduct at issue in this case was anything other than intentional, isolated misconduct. *See Hamlin*, 95 F.3d at 584. Therefore, the existence of an adequate post-deprivation remedy would bar Plaintiffs' action in this Court. *Doherty*, 75 F.3d at 323 ("a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate") (citation omitted). Several post-deprivation remedies are available to Plaintiffs, including the claims of wrongful demolition and conversion attached to their federal complaint. *See McKenzie v. City of Chicago*, 118 F.3d 552, 556 (7th Cir. 1997) (finding that in cases of demolition without proper notice, property owners in Chicago have state law remedies); *see also Hudson*, 468 U.S. at 534-35 (finding that a common-law tort suit provided sufficient post-deprivation remedy and "that [plaintiff] might not be able to recover under these [common-law tort] remedies the full amount which he might receive in a § 1983 action is not . . . determinative of the adequacy of the state remedies").

Having failed to allege that these state court remedies are inadequate, Plaintiffs cannot pursue § 1983 relief for their alleged deprivation of procedural due process.

*Supplemental Jurisdiction*

Because I find no basis for Plaintiffs' § 1983 claim, I also dismiss the latter two claims of their Complaint alleging wrongful demolition and conversion. These claims raise no federal question nor are the parties diverse, and it does not appear that Plaintiffs pled supplemental jurisdiction for these claims. Rather, their Complaint asserts only 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 as bases for jurisdiction. Having dismissed Plaintiffs' federal claim, I relinquish jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3); *Wright v. Associated Ins. Co.*, 29 F.3d 1244 (7th Cir. 1994).

For these reasons, Defendants' Motion to Dismiss is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: April 13, 2005